## Case No. 13,830.
### TEN HOGSHEADS OF RUM.
[1 Gall. 187.] [1]

Circuit Court, D. Massachusetts.   Oct. Term, 1812.

NON INTERCOURSE — PROHIBITED GOODS BROUGHT FROM NEUTRAL COUNTRY—ORIGIN OF GOODS—BURDEN OF PROOF.

The act of 1st March, 1809, c. 91 [2 Story's Laws, 1114; 2 Stat. 528, c. 24], applies to all goods of British manufacture, &c. although imported into a neutral country before the passing of that act. In what cases the onus probandi lies on the claimant. Condemnation on the facts.

[Cited in The Harriet, Case No. 6,100; The Short Staple, Id. 12,813.]

This was an information founded on the 5th section of the act of the 1st March, 1809, c. 91 [2 Story's Laws, 1114; 2 Stat. 528, c. 24], for an alleged importation into the United States of ten hogsheads of rum of the growth, produce, and manufacture of some colony or dependency of Great Britain. On the trial, the importation was admitted to have been at Boston, about the 1st of January, 1812, and the single question was, whether the rum was of British origin. The testimony on the part of the United States given by experienced and skilful witnesses proved, that this rum had the qualities and flavor of the rum manufactured in the British West-India Islands, and not the flavor or qualities of rum manufactured in the island of Cuba, from whence the importation was made; and the witnesses unhesitatingly pronounced their opinion, that it was of British origin. The testimony produced on the other side did not contradict that of the United States, and the principal witness who had been long engaged in the Havanna trade, and who had tasted the rum, admitted, that it has the flavor and taste of the rum of the British West-India Islands, and that he could not undertake to say, that it had the flavor or quality of the rum of the Spanish colonies. There was, indeed, other evidence, to show that the rum manufactured of late years in Cuba was of an improved quality; and that some portions were equal to that of the manufacture of British colonies. But in general it was admitted to be inferior, and scarcely ever used or brought into our market, and until within the last year, British rum was admitted into the ports of Cuba.

Mr. Crane, for claimant, contended that it was incumbent on the government to prove by clear and incontestible evidence, that the rum was of British origin, and imported into the island of Cuba after the passage of the law; that on the first point, there was no evidence but such as, being founded on opinions formed from the taste, was necessarily very doubtful and uncertain; and on

1 [Reported by John Gallison, Esq.]

the second point, no evidence whatever; that the rum must, therefore, be taken to be of the manufacture of the island of Cuba, from which, by the documents, it appeared to have been shipped.

Mr. Blake, Dist. Atty., for the United States, by direction of the court, confined his reply to the nature and sufficiency of the evidence to prove the origin. It was a fact, of which direct evidence was obviously impossible. It was necessary, therefore, to resort to the judgment of those, whose sense of taste was so improved by exercise and cultivation, as to enable them to decide with confidence and accuracy. It was well known that this sense is capable of such improvement, as to distinguish between the different objects presented to it, with as much certainty, as the eye. In the present case, the government relied on the evidence of a Mr. Hunt, who was once a grocer, and had been for years employed in the customhouse, in settling the proof of rum. The government having thus supported their case, it became the duty of the claimant to rebut this evidence, by tracing the history of the rum.

Mr. Crane observed that if any doubt existed, he should wish for time to procure a deposition from Havanna, but he was answered by the court, that no continuance could be allowed after argument, unless by consent.

STORY, Circuit Justice (after reciting the facts). It has been contended in behalf of the claimant ([John Winslow, Jr.] who acts merely as agent of one Henry Relando, a Spanish merchant, resident at Havanna, and the assumed owner), that the act of 1st of March, 1809, does not apply to British goods, which were imported into Cuba previous to the passage of that act, although brought subsequently into the United States. But this is directly against the words of the statute, and the prohibition extends to all goods of the growth, produce, and manufacture, of any British colony from whatever port they may be imported. If the argument contended for should prevail, there would be an end to the practical operation of the act, for the United States could scarcely ever obtain proof of the time, when the goods were imported into a Spanish or other foreign colony.

It has been further argued, that the United States are bound to prove the British origin of the rum beyond all possible controversy, and that nothing can be more uncertain, than the decisions of taste. I admit that it is an ancient proverb "de gustibus non est disputandum," but there can be no doubt, that in many instances the taste acquires as great accuracy and precision, as the eye. It is stated by the witnesses, that the flavor of British rum is very clearly dis-

tinguishable from all other colonial rum; and in the absence of all contrary evidence, I can perceive no reasonable ground to doubt the fact. How in general can it be ascertained, that any article is of the manufacture of a particular country, unless by the testimony of persons, who have, from long experience, acquired peculiar skill in the article? It is by no means uncommon for artisans to be able to pronounce with confidence, as to the origin of the goods connected with their trades; and their opinions come within the rule, which admits the opinions of gentlemen of the liberal professions—"cuique credendum est in sua arte." It has been supposed, that the onus probandi is not thrown upon the claimant in proceedings in rém, except in cases within the purview of the 71st section of the collection act of 2d March, 1799, c. 128 [1 Story's Laws, 633; 1 Stat. 678, c. 22]; The Luminary, 8 Wheat. [21 U. S.] 407; The Short Staple [Case No. 12,813]; The Matchless, 1 Hagg. Adm. 105; The Union, Id. 36. And I incline to the opinion that the provision alluded to is but an extension of the rules of the common law. Be this as it may, wherever the United States make out a case prima facie, or by probable evidence, the presumption arising from it will prevail, unless the claimant completely relieve the case from difficulty. In the present case, I think the United States have prima facie maintained the allegations of the information. The burthen of proof of the contrary, therefore, rests on the claimant. He, and he only, knows the origin of the goods. He can trace his title backwards, and give the history of the manufacture, or at least of his own purchase. If he does not attempt it, but relies on the mere absence of conclusive, irrefragable proof, admitting of no possible doubt, he claims a shelter for defence, which the laws of the country have not heretofore been supposed to acknowledge. I observe that the owner, in this case, professes to be a Spanish subject at Havanna. He is of course, in a situation, peculiarly fitted to enable him to show, that the rum was of domestic and not of foreign origin. The neglect so to do affords a presumption, that the case does not admit of a satisfactory explanation.

On the whole, I am satisfied that the rum was of British manufacture, and I accordingly reverse the decree of the district court, and condemn the property as forfeited to the United States, with costs. Condemned.